SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

KEITH RICHARD SECURITIES CORP.,
Defendant.

United States District Court
S. D. New York.
Jan. 17, 1957.

Paul Windels, Jr., Regional Administrator, William D. Moran, Asst. Regional Administrator, John J. Devaney, Jr., Chief, Branch of Enforcement, Andrew N. Grass, Jr., New York City, for plaintiff.

Max M. Rutten, New York City, for defendant.

BRYAN, District Judge.

The Securities and Exchange Commission has sued, pursuant to Section 27 of the Securities Exchange Act, 15 U.S.C.A. § 78aa, to enjoin the continuance of alleged violations of the Act by a broker and dealer in securities. The Commission now makes two motions for preliminary injunctions restraining defendant from continuance of the acts and practices complained of pending the hearing and determination of the action.

The S. E. C. alleges specific violations of Rules X–17A–3, X–15C3–1 and X–15C1–2, adopted by it pursuant to the Act. These alleged violations are (a)

failure to maintain and keep proper books and records as required by Rule X–17A–3; (b) failure to maintain the ratio between aggregate indebtedness and net capital required by Rule X–15C3–1; and (c) practicing fraud and misrepresentation on the public by maintaining a deceptive statement of financial condition in violation of Rule X–15C1–2.

Defendant registered with the S. E. C. as a securities dealer on May 16, 1956 pursuant to Section 15 of the Act, 15 U. S.C.A. § 78*o*, and was immediately advised of the necessity for compliance with the rules and regulations promulgated by the S. E. C. On October 15, 1956, when it had been in business for some five months, an S. E. C. investigator visited its offices on a routine investigation to determine whether defendant was complying with the rules. When he requested that Silver, defendant's president, make available defendant's books and records for examination, the only books which could be produced were blotter entries to and including August 31, 1956. Silver informed the investigator that he was unfamiliar with the provisions of the Commission rules relating to required books and records, and stated that in addition to the blotter, the only other book he had was a ledger which had nothing but blank pages.

Silver gave the lame explanation that an associate whom he had assumed was taking care of the books had withdrawn from the business in August; that he did not know until his associate left that the books had not been maintained properly; and that he was having them written up, though no efforts in that direction were then apparent. In reply to a question by the investigator as to the financial position of the defendant, Silver stated that he did not know whether the defendant was solvent or insolvent.

Upon learning of these facts the Commission commenced the present action upon a complaint seeking to enjoin defendant from continuing its business without maintaining proper books and records, and moved by order to show cause for a temporary injunction. This motion was adjourned pending further investigations.

Subsequent visits to the defendant's offices indicated that its books and records were being written up. Such books as were then available showed that, under the Commission's interpretation of its Rule X–15C3–1, the ratio of defendant's aggregate indebtedness to its net capital exceeded the 2,000 percentum limitation prescribed by that rule, and that its liabilities also exceeded its assets by a substantial sum. Thereupon the S. E. C. served an amended complaint to enjoin defendant from further violations in failing to maintain such ratio, and in maintaining a deceptive statement of financial condition, in addition to the violation initially alleged. The S. E. C. also made a second motion for a temporary injunction covering these additional violations. Both motions were heard together.

It is apparent that at least up to the time of the commencement of this action the defendant was inexcusably lax in maintaining proper books and records. Its conduct shows a complete lack of appreciation of its obligations under the law and to the public. While it appears that upon investigation by the S. E. C. and the commencement of this action the defendant made hasty efforts to comply with the law and the rules, it still has not stated to the Commission the name of the accountant who is claimed to have been employed to write up the books, nor has it produced anyone associated with it with the capacity or knowledge to make up a proper and adequate set of books and to keep them current. The circumstances demonstrate the likelihood that unless the S. E. C. is granted temporary relief the defendant will continue illegal and improper practices, at least in this respect.

█ While at the time of the hearing it appeared that defendant was able to produce trial balances and that considerable progress had been made on bringing its books and records up to

date, it is by no means clear that even now it is in full compliance with the law and rules. Even if it is, the mere fact that it had complied after proceedings against it had been commenced would not preclude this Court from granting a temporary injunction to restrain any further violations of this nature. United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303; Hecht Co. v. Bowles, 321 U.S. 321, 327, 64 S.Ct. 587, 88 L.Ed. 754; Goshen Mfg. Co. v. Hubert A. Myers Mfg. Co., 242 U.S. 202, 37 S.Ct. 105, 61 L.Ed. 248. Defendant's past conduct alone shows plainly that injunctive relief is necessary in order to insure compliance with the law and to protect the rights of the investing public.

The other alleged violations stand upon a somewhat different footing. Whether these further violations occurred depends upon whether or not the interpretation given by the S. E. C. to its Rule X–15C3–1, the so-called "net capital" rule, is correct. The investigators for the Commission came to the conclusion that the defendant had violated the net capital rule because on its balance sheet it showed that certain advances aggregating $5,194.80 were credited to an account entitled "underwriting expenses and commissions" and were thereafter reflected on the balance sheet as "income-underwriting". It is the Commission's contention that such treatment of these advanced expenses is misleading and that they should be treated as a liability and therefore part of defendant's aggregate indebtedness.

The defendant, on the other hand, claims that it was under no obligation to return any of these advances to issuers, that in fact they constituted income and not a liability, and that in any event since they were contractual commitments on underwriting contracts they should not be included in the aggregate indebtedness of the defendant under the net capital rule.

Rule X–15C3–1 provides generally that "No broker or dealer shall permit his aggregate indebtedness to all other persons to exceed 2,000 percentum of his net capital." For purposes of the rule "all liabilities on open contractual commitments" are excluded from the term "aggregate indebtedness". Rule X–15C3–1(c) (1). In turn, the term "contractual commitments" includes "underwritings", liabilities on which are therefore also excluded from aggregate indebtedness. Rule X–15C3–1(c) (5).

While conceding that the amounts in question here were advanced pursuant to underwriting contracts, the Commission contends that the exclusion of liabilities on underwriting contracts from "aggregate indebtedness" under the rule is limited to "firm commitment" underwritings, and does not apply to "best effort" underwritings such as are here involved. It maintains that this is "the normal and common usage of these definitions among members of the accounting fraternity."

These rules were framed and adopted by the Securities and Exchange Commission itself. The S. E. C. points to no specific authority for the interpretation of them which it makes here. No such limitation appears in the rule itself. There is at least substantial doubt as to whether the exclusion of liabilities on underwriting contracts from aggregate indebtedness under Rule X–15C3–1 is limited to "firm commitment" underwritings.

However, the Commission's interpretation of the rule has some reasonable basis. If expense monies advanced to an underwriter are not held in a separate account for the payment of expenses which it might be obligated to make under its underwriting contract, and are used as they were here to pay current general running expenses, the expense money could be completely dissipated, leaving the underwriter with no funds to pay the bona fide expenses he was required to make. This in turn might well lead to the payment of such expenses with funds belonging to others, or could lead eventually to insolvency and other violations of the underwriter's obligations.

If the S. E. C.'s interpretation is correct defendant has not only violated the net capital rule but also, for a time at least, its liabilities exceeded its assets, and it was guilty of deceptive practices under Rule X–15C1–2.

On the other hand, if the defendant's interpretation of the rule is correct, defendant was at no time actually insolvent and in all probability was not in violation of the net capital rule. Moreover, it appears that on the eve of the argument of these motions defendant produced $10,000 in additional capital which would for the time being, at least, cure the pre-existing violations of the net capital rule and any immediate insolvency.

There is not enough in the papers now before me to enable me to determine precisely what interpretation should be given to the definitions of "aggregate indebtedness", "liabilities on open contractual commitments", and "underwriting", as used in Rule X–15C3–1. Moreover, the defendant now has sufficient additional capital to make it solvent and in compliance with the "net capital" rule even if the Commission's interpretation of the rule is correct.

I am therefore not disposed to grant the S. E. C. the full relief which it seeks on the second motion. However, in order to avoid possible deception of the public, defendant will be required, in any financial statements published or maintained by it, to include appropriate notes indicating the position taken by the S. E. C. with respect to the items denominated as "income-underwriting", or otherwise relating to underwriting expenses advanced.

A temporary injunction will be issued pending the hearing and determination of this action restraining defendant from continuing its business without maintaining proper books and records as required by law, and by the rules of the S. E. C., and without making the notes upon its financial statements as previously indicated.

Settle order on notice.